We have four argued cases this morning. The first one is number 18-1138, NXP USA, Inc. v. NFC Technology, Mr. Oliver Dreimeyer. There are three issues on which the board erred, and I'd like to address all three. The first two involve plate construction errors, which the board erroneously inserted negative information. Let's talk about header field. If I were to look at the header field term without context, I agree that the use of comprising could be defined in many ways. And as you contend, potentially that can include the routing parameters. But wouldn't that contravene BRI? No, Your Honor, I think not. Because the header field, as you say, in normal parlance, that's a box into which information is put. Both the specification and the claims use the term header field in that fashion. So on A46 in the specification, it says the header fields contain the information required to control the router. So the header field contains the information. The header field isn't the information, it contains the information. And then in the claims themselves as well, and this is claim 1, column 19, 1-2, the controller data encapsulated in a frame having a header field. So the data, the controller data, is put into the header field. But the claim has to be interpreted with an eye towards giving effect to all the terms in the claim, right? That's right, Your Honor. So claim 1 expressly requires the step of causing the controller to search for a destination point of the data in the routing table by using the routing channel number as an index to select the destination point to which the controller subsequently sends the data. That's right. But that step interacts with the step of saving in a routing table the routing channel number and routing parameters, right? That's right, Your Honor. And I think what that structure does is support a reading in which the header table excludes the destination point. But it's only the destination point that is identified by the router. But then you create redundancy, because with your argument, the interplay of those claim steps to me indicates it wouldn't make sense for claim 1's method to save a routing parameter in the routing table while also including that in the header field. Well, it just doesn't exclude that. And indeed, what's telling is that claim 1 doesn't say anything about other routing parameters, such as the protocol. And so that could be in both the header and the routing table, because claim 1 is simply silent about that routing parameter. And what the structure says is— But the routing parameter is determined by using the routing channel number as an index to look up the routing table. No, Your Honor. And this is really important, Your Honor. I'm glad that you went to that, because on Appendix 15, the board is quoting— Just to be clear, we're talking now about the second issue here, right? We're talking about the second of the three issues that the board identified, yes. Yeah, and the second claim construction issue, which is whether the routing channel number has to be able to identify the destination point without any assistance from— So that's a separate issue, the index. And I agree that they're related, but if I could— We're not talking about the index issue. We're talking about the header field, right? At this point, the header field, as Your Honor says, what the board says is it has to exclude the routing parameter, because you're using the routing channel number to identify the routing parameter. And that's on Appendix 15, and they're quoting from Patent Owner's Brief. But that's not what the claim says. The claim says, and this is at Column 19, Lines 2 to—I'm sorry, Column 19, Lines 8 to 9, basically, using the routing channel number as an index to select the destination point. Right. So it's only the destination point that is selected by the routing channel number, not routing— But you have to read them all together. Excuse me? You have to read them together. You do have to read them together, Your Honor, but routing parameter, again, is a term that includes other things beyond the source point and the destination point. By the specifications owned language, it includes things such as the protocol. And yet, it's silent as to whether the protocol could be in the header or in the routing table. It could be in both, because it's silent about that. Another way of asking Judge Wallach's question is, when you read the patent, the takeaway seems to be the interesting twist of this invention is stripping out all the data in the header, all the routing parameters, and just having a simple routing channel number, and then you have a lookup table, a routing table, that has all the relevant routing parameter information for a given routing channel number being used as an index, as a lookup. And so, therefore, you save all this kind of space in the frame. Well, Your Honor, on Appendix 5 in the Board's decision, it says the routing parameters may include also the operating mode and the contactless communication protocol, but it doesn't say that those must be included in the table. It doesn't say they must be excluded from the header field. It doesn't say anything about those. And so, the fact that they talk about having a shorter header field, it is a shorter header field, to be clear, if you simply take the destination address, which would be a longer, more bytes required, and you have accomplished that goal. Now, mind you, overheading is a phrase used once in the specification. So, to suggest that that one word controls everything about the claims, I think, is over-reading the use of that, and the claims do accomplish that. So then, how would you describe what the inventive concept is communicated in the patent? Well, I think it is the fact that it uses the routing table because you can have less information. You don't have to use that in the, you don't have to buffer it. That's one of the things it describes, is you don't have to buffer it. So, anything in the routing table, you don't have to buffer. Would it be fair to say that in IBM, it achieves part of the purpose of the invention by narrowing the information in the header, but it doesn't go all the way, which is the objection here? I think it does go all the way, Your Honor, in the sense that what it does is it reduces the scope of the header, but what's claimed... No, no, but that was my premise, that it reduces the scope of the header, but the patentee argues that it doesn't reduce the scope of the header to a single number. But that's, the problem, Your Honor, is that reducing the header to a single number is never claimed, and instead... I understand what you're saying. And the argument is that the purpose of the invention requires that you reduce the header to the maximum possible extent, and they're saying that while IBM does reduce it to some extent, it doesn't reduce it to the maximum possible extent. Your Honor, maximum possible extent is not in the specification. No, I understand. You're not on the same page that I'm on, okay? But what I understand them to be saying is that this does not serve the purpose of the invention because there are still two numbers in the header, and it would be consistent with the purpose of the invention to eliminate that second number, even though IBM does go part of the way to reducing the contents of the header. I think you've accurately stated their position, yes, sir. Okay. Now, unless there are other questions about the header, could we go on to the second issue, which I find even more difficult than the first issue? And that is, as I understand it, looking at the language of the claim, that there's no question that on IBM, the routing channel number does help you get to the destination point, but it can't do that standing alone, right? So the question is, how do we interpret this language? Does it mean that the routing channel number has to do it alone, or can it have some other assistance? I'm not sure that the Board's use of the term or construction of the term index really gets the Board where it would like to go, but what does the specification tell us about whether, in fact, the purpose here was to be able to do this with a single number without the use of another number, which I take it is the issue here, the second issue, right? The specification, yes, I think that's right. And the specification does not say that that's essential to the invention. And you're right, I totally agree that index itself, you know, and if we look at page 42 of our brief, there's no question in the diagram that the green VPI5 will get you to VPI out, or VC5, I'm sorry, will get you to VPI out, that's the destination point three, but you have to look at the VPI in to tell you what part of the table to look to. So it tells you to look to the box that's circled in yellow. So just so we're all on the same page, the incoming VCI, that value in and of itself is not enough to locate the destination point, is that fair to say? In and of itself alone, that's right, that's really the dispute, is that the patent owner argued and the Board adopted that it had to be the routing channel alone, and the claims don't claim that, and it's not inherent. And then I guess the second issue is that when you look at your proposed column of incoming VCIs, you can have values that repeat in that table, like the number one, the value one can repeat. And so another concern that I have is the so-called routing channel number. Well, we always get to the right routing channel number because first you use the VPI, the path identifier. Right, you have to use an extra piece of information to tell you where to look, and then from the routing channel number you do get one destination point, and only one destination. But I guess the concern I have with this view of the word index is, when I think of the word index, is it's supposed to be, it's supposed to serve as this efficient shortcut to be able to easily access some other information, some kind of data file or something like that. And what we have with your proposed index is a limited amount of information that only reaches an ambiguous result. If you have a table with repeating values for your proposed index, then when you see that number value one, you don't know what you're looking at. And so let me give you just an analogy. Assume you have a football team with 100 players, and they're all wearing jerseys, but with numbers. And if you send 10 guys out on the field, all of them wearing the number 12, then those numbers can't serve as any kind of index as to who those people are running around out there, and how much they weigh, and what position they play, etc. So you've defeated the whole purpose of the index and the using of the numbers. I'm reacting on the spot to your hypothetical, but if the hypothetical was that there was an offensive team that wore blue and a defensive team that wore white, and you had one person on the offensive team with 11 and one person on the defensive team with 11, 11 would still serve as an index for the player. You have to look first at, are they offense or defense, but then 11 is the index. And I think visually you see that on page 42 in the diagram because five, which is the routing channel number, does appear twice, but you're not going to get to two different destination points. You're going to get to the right destination point because the path indicator has told you which part of the table to look at. Again, that's predicated on using the VPI in addition to your proposed index VCI. That's right, and I think that when the board said that that was in the nature of the index, it was construing the word index to insert this negative limitation of a loan, which was not a construction of the word index that the patent owner had proposed. We had no notice of it, and so there was also the problem that the court has identified. Here's another analogy. What if I tried to save 10 different documents I was working on, all with the same file name one, and then I look at my index and I see 10 ones. I don't know which one is which. I wouldn't be able to find my document in any kind of reasonably quick way, and so I've defeated the purpose of the index again, haven't I? Well, Your Honor, the index is also within the right spot in the table. You're only going to get to one destination point. Point 3 is the only destination point that's associated with routing channel 5 once you're in the yellow box there, and the question is, can you use... This is on page 42 of our brief. It's the figure 2-8 of IBM, and so it says use as an index when I look to the box in the yellow, and I look to 5, and it is associated with, correlated with BPI 3, which is the destination point. Yes, it's only associated with BPI 3. There's no other destination point with which it's associated, and so it is used as an index, as I just described. There is nothing in the claim language that excludes using something else as sort of a pre-index to tell you what part of the table to look at, and if I could just summarize in very quick fashion with respect to the third issue, because we do have all three issues, that's a classic example on page 33 of the board, laying out each party's position. They agree with one, but they don't explain why, and it's particularly disconcerting because in the institutional decision, they did the same thing, laid out each party's position on app 213, and said that ours was persuasive, and in the final written decision, they did the same thing, and they said ours is not, and then they... It's a non-sequitur. They point to, we didn't explain how you combine... Well, they also said they didn't believe your expert. What's that? They also said they did not believe your expert. Well, but they don't explain why again. They then lay out our position, and the why is that we didn't explain how you would combine IBM and PCIVI, but we haven't even been talking about PCIVI at that point, and there's eight pages of the petition in reply in which we explain how. Page 51 has a diagram which maps the two on, and there's no explanation about why that's not persuasive, so that you have to be able to determine the basis of the board's rejection of a Okay, well, we're out of time, but we'll give you two minutes for rebuttal. Thank you. Let's hear from Mr. Tucker. Good morning. May it please the court. The court should affirm the board's decision if it agrees with NXPCT with regard to any of NXP's three arguments. Let's start with the index issue. Why does using something as an index mean that you have to go to a single destination? For example, if there's a biography of someone and there's an index for the biography, there are going to be multiple entries, for example, if you look up the name Brown there. So why does index necessarily mean that it has to take you to a single place as opposed to help you in navigating how to get to a particular place? I think there are two reasons, and they're particular to this patent. So the first reason is the agreed construction of routing table, which requires a correspondence between the thing that's the index, the routing channel number, and what's is that it's not just about index here. It's what the index does in the claim, and the board noted that in its decision at A30 to 31. It's more than just an index. It's an index to search for a destination point and to select a destination point, and the board's determination here was correct. Where is the language of the specification that talks about that so we can understand that the specification tells us that's what the index has to be? Your Honor, that's in the claim. Okay, but nothing in the spec gives us any insight as to how we should think about index. The specification is consistent that what is described as the index, the routing channel number, uniquely corresponds. But just so I can drill down, there isn't anything I could read in the spec right now that will further reinforce your position on how I should understand index as it's used in the claim. Is that right? I disagree with that because I think that... Well then, is there, where would it be in the spec? Sure, so I think the best place to point to is table three, which is NXP's best evidence that our position is wrong. But if you look at table three, and this is the table three spans columns 17 and 18, this is the embodiment NXP points to as potentially destroying our argument, but it doesn't. So NXP points to channel number 40 and says, well you've sent the information to two different points, P1 and P2, so it doesn't uniquely identify the channel number 40 uniquely identifies it. Okay, but I understand you're arguing against their use of the specification in this respect, but I think what Judge Chen was asking you, and what I was asking you also, is what is it in the specification that tells us that your interpretation is right? So again, I would point to the plain language of the claims. Okay, but it's not about the specification. Column 9 describes an index. Column 9 lines 25 through 28 describes using the routing channel number as an index to find the destination point in the routing table. What language here tells us that you're right? Because nothing else is used other than the routing channel number. Okay, but it doesn't say that nothing else can't be used. It just shows that in this embodiment that only the routing channel number is being used, right? That's correct. So, like I said, our argument is based on the plain language of the claim that requires the index. So under BRI, why can't you use something else in addition to the routing channel number to reach the destination? Because then you're not using that one thing as an index to select the destination point. The VCI in ATM cannot be used as an index to select the destination point because you need the VPI as well. So it can't be used as an index to select the destination point, and the board noted that. The board noted not just that it was the nature of the index, which NXP points to, it was also the fact that the routing table stores these correspondences, and then the correspondences are used to search for and select the destination point. If there aren't any other questions on index, I'd like to move on to the one issue that has the most deferential standard of review because I think all the parties agree here that the board only needs to agree with NFCT on one of these issues to affirm the board's decision. And that's the saving in the routing table claim element that NXP addressed at the end of its oral argument. NXP admits that the board cited its evidence, but it argues that the board didn't explain why it agreed with us instead of NXP. We disagree because the board explained that it credited our expert over NXP's expert, and more importantly, that's enough under the law. So the synopsis versus mentor graphics case from 2016 explained that the board provided sufficient reasoning for an argument regarding whether the prior disclosed a claim limitation by addressing the argument generally and saying that it relied on the prevailing party's expert. Similarly, in Novartis versus Torin Pharma in 2017, the board cited two relevant pages. It seems to me that the problem, if you look at page 33 of the statement, merely acknowledging that the virtual paths disclosed by IBM have endpoints does not explain sufficiently how the IBM protocol can optically be integrated. Well, the evidence that the petitioner presented did more than that, didn't it? So I think there are two parts to this. Is that true or not true? That the petitioner's evidence is more than what the board characterized it as doing? No, Your Honor. I think that's not true. I think that the board correctly characterized the petitioner's evidence, and I think substantial evidence supports the board's finding. That's all that was in the petitioner's evidence? The petitioner acknowledged that IBM's— You mean on that specific point? On that specific point, yes, Your Honor. Thank you. But there, the petitioner acknowledged that—argued that IBM's VPIs have endpoints, and then—but then it did not explain—and this was the point of our expert, Dr. Walker's testimony that was credited by the board—the petitioner did not explain why it swapped out a path identifier for a point identifier in the routing table that it devised. So that was the basis of the board's holding. The board said, NXP, we are going to adopt your combination as you proposed it, but even that combination falls short of meeting this claim limitation. Where did your expert say that that's all that the petitioner's expert did? At paragraph 153 of— What page were you talking about here? This is A3148, I believe. Maybe A3147, if I can find it here in a second. Oh, it starts on 47. Yes, thank you, Judge Walker. It starts on 47. It's paragraph 153. So, first of all, Dr. Walker's testimony starts at paragraph 145 with regard to this. He explains why ATM falls short. He explains how— Where does he say what the board said? That's what my problem is. The board says simply explaining the two destination points isn't enough. My interpretation is they're saying that's all the petitioner's expert did. And I've looked at the petitioner's expert testimony. This stuff is very complicated. It does seem to me that he did more than what the board is saying he did. And what I'm asking you to show me is where your expert says that that's all the petitioner's expert did. And I was pointing you to paragraph 153 where after explaining what was wrong with NXP's combination, Dr. Walker explains that the petitioner and its expert didn't provide any reasoning why you would swap out the points identifier and the path identifier. But that's a different point. I think they're absolutely related, Your Honor, because— Well, they may be related, but they're not the same point. I mean, in other words, the board says all the petitioner's expert did was identify endpoints, and that's not enough, which sounds on its face probably correct. The question is whether the petitioner's expert did something more which the board ignored. And I don't see your expert saying that their expert limited himself to the two destination points. So— He does say that he doesn't combine—come up with a convincing reason to combine. That's true. But he doesn't say that all the petitioner's expert does is identify two destinations. I agree that that statement is not in here. But what Dr. Walker did, and the substantial evidence supporting the board's decision is in Dr. Walker's testimony, is he walked the board through the problem with the ATM reference, which is that the table doesn't include source and destination points. And so what NXP did—this is all Dr. Walker's explanation— You really have to look at 145 and 148. Yes, Judge Walk. I agree. Like I said, it starts at 145 and it goes through 153. And this is the explanation that Dr. Walker gives. He says the ATM reference itself doesn't disclose source points in the routing table. What NXP did is it took the part where you're supposed to identify paths and it plugged in a point identifier instead. And then that's when paragraph 153 comes in and he says they never explained why they would do this. That's the testimony that the board credited and that substantial evidence to support the this. As NXP proposes, NXP's combination falls short. That's enough to affirm the board's decision on all points in the case. Just on that point, what are we to make of this language on page 29 of the board's opinion where they seem to say they're not going to address the combinability question? Thank you, Your Honor. I'm glad you asked this point because NXP tries to make this into an admission by the board that it wasn't going to consider evidence. That's not what the board said. The board said at 829 because the combination, even if as proposed by the petitioner, doesn't meet these claim limitations, we're not going to reach the issue of whether it would have been obvious to combine these two references in the first place. So first of all, there's two points here. First of all, reaching an issue and not considering evidence are two totally different things. The board didn't reach the issue of motivation to combine. It never said it didn't consider evidence and the court is presumed to consider the evidence that it cited. Yeah, but this sounds like they're not reaching something other than motivation to combine. It sounds as though they're not reaching combinability. Exactly. And that was a different issue than the one that's on appeal here. This was my second point. Well, how is it a different issue? Right. You need to consider the context of the briefing to the board. So there were many other arguments below that didn't reach the appeal. There were three arguments that we made about the motivation or the rationale to combine. We argued that ATM was non-analogous art. We argued that it taught away, and we argued that there was no motivation to combine the references. That's the issue that the board didn't reach, but it's separable from this issue of whether or not the claim limitation is missing after what the board did was say, okay, NXP, we'll spot you in your combination argument, but you still are falling short on this missing element here in the claim. So once you understand that context that the parties argued all these other things to the board, that's the issue that the board didn't reach. It said, okay, we're just going to combine ATM and PCIVI, the other reference, but even when we do that, you're still missing this claim limitation. Which limitation is that? This is saving in the routing table, the source and destination point identifiers. It's the third issue in the parties' brief. Unless there are other questions on that, I'm happy to talk about the header field with the time that I have left. So the board correctly construed header field to exclude routing parameters saved in the routing table. I think one of the disputes between the parties here is a legal one, which is whether or not you need an express disclaimer or lexicography. I think the real question is what happens with the—what do we do with the word comprising, the header field comprising the routing channel number? Sure, Your Honor. So— That suggests pretty strongly in patent law land that you can have other things besides the routing channel number contained in the header field. Comprising is an open-ended term, but— So what do we do? What the board—we should do what the board did. Because the board applied the correct analysis here. The analysis was that the purpose wouldn't be served by having more than the routing channel number in the header, right? That is one of the three different things that the board found that weighed in favor of the broadest reasonable interpretation excluding routing parameters saved in the routing table. They looked at three different things. One, it was the structure of the claims. The claims require this routing table to store these correspondences and then require looking up the destination point in the routing table. It wouldn't make any sense to put them in the header if it's also in the routing table. It's like asking for directions when you know where to go. But it really doesn't make sense in light of the second— Well, it also is like making something more complicated when your point is to make it more simple. Exactly, Your Honor. And that's the purpose of the invention. And that's where the specification— That's a tough argument in terms of claim construction that it serves some of the purpose of the invention. But the purpose of the invention requires you to go all the way in reducing the content of the header. I mean, that seems a little goosey-goosey. Your Honor, I think it is the purpose of the invention. And that's described in column three of the patent. The patent explains the problem, these long and complex headers, the overheading problem. It then provides the solution two sentences later, which is a method— What line are you on? I'm sorry, column— So the overheading problem is described at column three, lines 50 through 56. And then in the very next paragraph, starting at line 57, it says, it is therefore desirable to provide a method for routing data in an NFC chipset that is simple to implement and does not require any long header fields. Yeah, but it doesn't say that it doesn't require more than one number in a header field. And like I said, it was three things that the board relied on. It was the structure of the claims. It was this distinction over the prior art. And then it was the specification making good on its promise. Every single embodiment in the specification supports our construction that if you save the routing parameters in the routing table, you also do not save them in the header. So the header field, in your view, can have one and only one number, the routing channel number. Is that how we should understand— It's not that it can have one and only one number, no. It's that whatever routing parameter is in the routing table, because you already have it in the routing table and you're going to look it up, those channel numbers are excluded. And that's actually a good point because that was a dispute that happened below, is NXP tried to morph our arguments into an argument that we were trying to eliminate all routing parameters from the header. That's not our construction. Our construction is the routing parameters that are saved in the routing table are excluded from the header field, only those routing parameters. I see that I'm out of time. All right. Thank you, Mr. Tucker. Thank you, Your Honor. If I may, Your Honor. I wanted to start with the header field point and in terms of the need to exclude source point. I think it is instructive to look at Claim 12, which is also, of course, to claims at issue here, which at lines 38 to 40 says, upon receiving data from the source point encapsulated in. And so all we're suggesting is that the header might include the information of the source point from which it's coming. And I don't think that you can read the claims or the structures as necessarily excluding that. It doesn't need to. That's the language of the spec they pointed. It's not required. But it certainly doesn't suggest that you're excluding the source point from which the data came. Why don't you address the third point? In terms of the third point, Your Honor, I think that there's no question that our expert did explain that the path can identify the endpoint, the source point, or the destination. Of course, we know that that can be true as a general matter. If you're at the airport and you're looking up at New York, it's both the path that the plane is going to fly. It's also the destination point. And so there's nothing inconsistent with the path also identifying the destination point. And our expert explained that. And again, I think in the opinion, all the board does is lay out the two positions and then it says we adopt the position of the path. I'm not sure they can't do that. Why can't they do that? Well, they have to explain it sufficient for this court to review it. Well, we can review it by looking at what the party said whose position has been adopted. Well, I think, well, because this is deferential review of the board under the APA, it's only the board's rationale that can stand. And so we need to know what that rationale is in the first instance. If they lay out the rationale articulated by a party and say, we really like this rationale and we adopt it, that's not enough? They have to explain why. Again, in the institution decision, they laid them both out and they said that ours was the more convincing. And of course, they can change their mind, but they have to explain why. When, in this opinion, they seek to explain why, it's a non sequitur. They talk about, we haven't shown how you would operably combine them. We have eight pages that explain how you operably combine them, and they haven't explained why that isn't sufficient. But it also is neither here nor there of whether a path can identify a destination point. Because, of course, it can. It does at the airport and it does in IBM. And our expert explained that. And they haven't explained why that's not adequate. OK, I think we're out of time. Thank you, Mr. Holwick-Lamar. I thank both counsel. The case is submitted.